He wants it whenever he's ready to receive it. Good morning, and may it please the court. Mr. Rollins. My name is Andrew Flynn, and I represent the defendant appellants in this matter, Les and Brenda Oyler. This morning we're here asking the court to reverse the circuit court's order granting the opposing parties' motion for summary judgment as to their claim for adverse possession. A motion for summary judgment should only be granted if the pleadings, depositions, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. Further, any and all evidence presented should be viewed in a light most favorable to the non-moving party. In the present case, the non-moving party would be the defendant appellants. We are here because a genuine issue of material fact does exist, which defeats the opposing party's claim for motion for summary judgment. In the present case, the plaintiff at Belize filed a claim for adverse possession, claiming that their predecessors entitled adversely possessed property up to an old fence line. The property at issue lies west of the defendant appellant's property and east of the plaintiff at Belize's property. The property at issue may range from anywhere from 2 to 11 feet in width. And there lies the issue. In order to prevail on a motion for summary judgment, the plaintiff at Belize had the burden to prove the boundaries of the land claimed by adverse possession by clear and unequivocal evidence. The allegations and assertions in this matter contradict one another and do not set the boundary by any clear or unequivocal evidence. There are three lines you'll be hearing about this morning. First is the Shawnee service line, excuse me, Shawnee survey line. This is the actual property line pursuant to the property descriptions and deeds. Second is a tree line, which is located between the parties' parcels of the old property. And the third is the old fence line, which its location is the main reason or the subject of this litigation. For visual purposes, the Shawnee survey line is west of the tree line. And the location of the old fence line is presently in dispute. Here the evidence submitted illustrates a wide array of possible locations of the old fence line. Specifically, the plaintiff at Belize's predecessor in title, William Emsley, testified that the fence line was about a foot to 18 inches east of the tree line, and that he was about two feet over the defendant's property. Adversely, Anthony Ellis of Brown and Roberts Incorporated, which is a surveying engineering firm, provided an affidavit saying that the true property line was approximately 11 feet west of the existing fence line. We anticipate that the opposing party is going to rely on the circuit court's personal view of the property during this litigation. Specifically, the circuit court went out and viewed the property, indicated that it found an old railroad tie approximately 10.5 feet east of the Shawnee survey line. However, that's all we know about the court's observations. We didn't hear about any other railroad ties. We don't know what extent the court looked at the property. None of that is provided. Adversely, we did learn from one of the defendant appellants that some of the railroad ties were west of the tree line, while others were located within the tree line. So here we have evidence of railroad ties being east of the tree line, in the tree line, and west of the tree line. Even more, some of the railroad ties have been knocked over and are no longer in their original position. Further, there's an area between the properties where there's neither railroad ties nor trees. In those areas, we can't reasonably be certain of any old fence line, as there's nothing relating to any fence or trees at all. Counsel? Yes, sir. You're asking for the trial court's ruling on the summary judgment motion to be reversed and then, what, remanded and have another trial based on the same evidence? Your Honor, it's our position that we weren't able to fully present the defendant's case because of the motion for summary judgment. So, yes, we're asking for it to be reversed and remanded so that we can proceed and present a full case, have our case be heard. The facts of the present case are spot on with Schwartz v. Piper, which is a 1954 Illinois Supreme Court case. There, the facts are eerily similar to the present case. There, the plaintiffs allege they had adversely possessed real property up to an old iron fence. That old iron fence had been removed 30 years prior to the litigation beginning. Same here. Here, the old fence at issue had been removed 20 to 25 years before the pending litigation. There, the plaintiffs presented their evidence, and the Supreme Court found that the witness testimony was uncertain, vague, indefinite, and conflicting. Specifically, witnesses described where this old fence had been in relation to a sidewalk, in relation to other landmarks within the property, and they were all conflicting. So the Supreme Court held that a variation in the location of the line, even if only by a foot or two, is of grave importance, and that the location of the boundary line must be ascertained with reasonable certainty. In that case, they reversed the case and held that the plaintiffs had not met their burden to prove that reasonable certainty. Here, the circuit court relied upon Plaintiff's Exhibit A to set the boundary line at 10 1⁄2 feet. Exhibit A alleges the old fence line is 10 1⁄2 feet east of the Shawnee survey line. Exhibit A is a document that was prepared by Jim Brown of Brown and Roberts Incorporated, that same consulting and engineering firm. He submitted a supporting affidavit with Exhibit A where he states the use of 10 1⁄2 feet to describe the old fence line is solely based on, quote, where he was told a fence line previously existed. So the court relied on this document based on hearsay, and we don't know what the source of that hearsay is. That's it. There's no other evidence within the record other than a self-supporting affidavit executed by one of the plaintiffs stating that the fence line is 10 1⁄2 feet. Otherwise, that record says two feet, a foot and a half to two feet, 11 feet. We don't have any exact number supporting 10 1⁄2 feet other than this exhibit and a self-supporting affidavit. Because there are no facts to support a finding of 10 1⁄2 feet, no facts to ascertain with reasonable certainty where this old fence line existed, we are asking that this court reverse and remand the trial court's decision so that we may present our case to the court. The trial court replied that it was a 2016 plan. What's your comment on that? It's my understanding the document the court relied on was this document prepared by Brown and Roberts, which was the document I referred to where he was told that a fence line was 10 1⁄2 feet. So you're saying the basis of the document is not reliable? Yes, sir. Do you honest have any further questions for me this morning? Thank you. Thank you, counsel. Counsel? Thank you, sir. May it please the court, counsel, as outlined in my brief, we believe that the varying measurements that have been highlighted by Cohen's attorney are simply taken out of context from the record. We've got Shawnee surveying line, which is the actual deed line. We have the fence line, and we have the tree line. And what appellants have done is they have conflated measurements distinguishing the fence line and the tree line versus the fence line and the Shawnee surveying line. Those are the two relevant points to set the boundaries of the adversely possessed property. And it's important that as the court looks at these particular measurements, we look from the record and see that William Inslee didn't merely say the fence that he was over 2 feet. The deposition that that is taken from is William Inslee's comment about a settlement discussion that was held in 2006 between Les Oiler and Bill Inslee, where Les says, you're over on me 2 feet. When you read that entire deposition page and discussion, Bill says, I don't accept that. I don't know what you're talking about. It's the first I've heard about it. And if you want to make a change, I want to leave it as it is but give me your evidence.  When this first came to light was the Anthony Ellis affidavit and aerial photograph and letter dated in January of 2006. He indicates to Les, do your work for Les. You've got an occupation line problem not only between the Bill Oiler property. You've also got a problem on the east side of your property with another neighbor. In that letter, he says to Les that the fence line is approximately 11 feet over onto you. That's what we pled in our initial complaint, an approximate encroachment of 11 feet. When you look at the aerial photograph, and I'm not sure with the e-filing how clear your aerial photograph is that's attached to the Anthony Ellis affidavit. When you look at the Les Oiler property, it has a bold black line around it and Anthony Ellis indicated by a thinner line with X's where the various encroaching fences were including this fence that we're talking about with our boundary line today. And at the southwest corner of the Les Oiler property, there's a notation, 10.5 feet and there's an arrow pointing to that encroaching fence. That's the initial information where we get our 10.5 feet from. The affidavit of Jim Brown from Brown and Roberts indicates that he made a measurement from the Shawnee surveying line, which that survey wasn't conducted until I believe 2014 after the litigation started. But there's no question that's the proper survey line between these properties. Then Jim Brown came in and he measured and marked 10.5 feet so that we could see in the world where 10.5 feet would lay in relation to the Shawnee surveying line. There's testimony about existing railroad ties and fences. There's testimony about posts that had been knocked over, parts of the fence that had been taken down over time. But the key point in this case is there is still, at the time of this ruling by the court, remnants of the fence. And the court went out and saw that. And what's important here is this was a viewing of the property at the request of the Oilers. We agreed to it. Sometimes the simplest answer is the best. Let's go look at this. The court in its order reviewed the entire file, the affidavits, the depositions, the admissions, and its viewing. It indicated that nothing was inconsistent. And the court used the Brown and Roberts diagram to say this is the proper line. Appellants make a great point and much concern about Jim Brown saying in his affidavit, this is where I was told the fence was. And that may or may not be true. But that doesn't attack his measurements of 10.5 feet from the Shawnee surveying line. This is where 10.5 feet lays in the world. The judge didn't rely on what Jim Brown was told where the fence was. The court saw it itself. Further, the court had from the entire record only a 10.5-foot measurement, approximately 11 feet in the letter of Anthony Ellis, but backed up by the photograph, aerial photograph showing 10.5 feet. 10.5 feet has been consistent throughout this record when you look at all the measurements. 10.5 feet not from the tree line to the fence line. Tree line is not relevant as far as a line goes. But 10.5 feet from the fence to the Shawnee surveying line. This is very simple. The court was very precise and specific in its ruling. It reviewed all the evidence. All the evidence is consistent. And we would urge the court to not take these measurement discussions out of context, but look at how they've come about. And they fully support the court's ruling. And we would ask the court to uphold this ruling. Does the court have any questions I can answer for you? I don't believe we do. Thank you. Thank you. Counsel, thank you. Just to briefly reiterate that, first of all, none of the measurements are consistent in this case. The record is reviewed. There's not a single measurement that lines up with another one other than the one affidavit followed by the other self-supporting affidavit. As far as the tree line's relevance, it's absolutely relevant in this case. Almost everyone testifies to the fact that where this old fence line was in proportion to the tree line. The reason that's important is because the 10 1⁄2 feet goes over the tree line significantly. So that's why the tree line is sufficient. This isn't a case where they're saying the tree line is the boundary. And that goes into some of the case law that the plaintiff at least provided to support their position. First, they cite Joyner v. Jansen. There, the court held that they had properly and reasonably ascertained the line of the adverse possession. But in that case, they were using a brush and tree line. They can look. We're saying it's the brush and tree line. There's the brush and tree line. Here, that's not the case. Again, we're going past the tree line is what the allegations are. In Bacatus v. Tram, there was definite concrete markers that showed the boundary line. Again, that's something that wasn't movable. They can look. Here are these concrete markers. That's the line. Again, we don't have these. We have some railroad ties. Some are on the ground. Some are all over the place. They cite Noakes v. Cary Longhead v. Noakes. And that was where the court held that 7 inches was de minimis and wasn't a big deal. Here, we have a range from 2 to 11 feet. And as we know in Schwartz, that's of great importance. And finally, a Fifth Circuit case, Klingo v. Kerr, there they found there was a river. There was no way to reasonably question where the river was located. Obviously, you can look at the river, and that's the boundary. So, again, all the cases that show that the plaintiffs used to support their position are all things where there's definite ascertainable markers. And, again, in this case, we don't have it. Just to be clear, again, they are asking past the tree line, and there's nothing there except maybe a railroad tie where they're scattered all over the place. Any other questions for me this morning? Wasn't there evidence in the record that the railroad tie was in the location where the fence was? There was a record that it was one railroad tie approximately 10 1⁄2 feet, but there was also evidence that there was railroad ties west of that, on the ground, no longer in their original position. There's no evidence to say whether that railroad tie was a north-south railroad tie, east-west railroad tie, anything of that nature. Does that answer your question, Your Honor? Well, what evidence is there in the record that there's a genuine issue of material fact? I think the fact that all these different numbers, the burden is on the plaintiff to prove by reasonable certainty that this boundary is ascertainable and is not vague or indefinite. The only evidence showing 10 1⁄2 feet is an affidavit from an engineering firm where they were told where the fence line was, and then a supporting affidavit by the plaintiff saying that's where the fence line was, even though the record is clear that the plaintiff nor the defendant lived there when the fence was there. So every other piece of evidence is 2 feet, 1 1⁄2 to 2 feet, 11 feet. So there's a wide variety of evidence that was presented, and none of it is 10 1⁄2 feet that's reliable. Thank you, Your Honor. Thank you. We appreciate the briefs and arguments of counsel. We will take the case on.